UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JULY V. M.**, <br><br> Plaintiff, <br><br> v. <br><br> **KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | Civ. No. 21-4141 (KM) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

      July V. M. ("Applicant") brings this action to review a final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that the Applicant was not disabled from March 11, 2014, the alleged onset date, through July 10, 2020, the date of the decision. This admirably focused Social Security appeal may be reduced to a single issue: whether, at step five of the standard analysis, the ALJ properly concluded that there were jobs existing in the national economy in significant numbers that the Applicant, given her sedentary residual functional capacity (RFC), could perform. I will remand for further development of the record on that issue, as to which the Administration has the burden of proof.

1

I.   **BACKGROUND**[1]

Applicant applied for DIB and SSI, citing arthritis in her lower back, herniated discs, sciatica, and left knee pain. Her application was denied initially and on reconsideration. (R. 118–23, 127–32) She requested and obtain a hearing before an ALJ, at which she was represented by counsel. (R. 33–65) On July 10, 2020, the ALJ issued a decision finding that Applicant's severe impairments limited her to sedentary work, but that there were jobs existing in significant numbers in the national economy that she could perform, and that therefore she was not disabled. (R. 12–27) The Appeals Council denied review (R. 1–6), rendering the ALJ's decision final. Applicant now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

II.   **DISCUSSION**

**A. Five-Step Process and this Court's Standard of Review**

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ

---

[1]   Certain citations to the record are abbreviated as follows:

   DE = docket entry in this case

   R. __ = Administrative Record (DE 7)

   Pl. Br = Plaintiff's brief in support of remand (DE 10)

   Def. Br. = Commissioner's brief in opposition to remand (DE 11)

   Reply Br. = Plaintiff's reply brief in support of remand (DE 12)

properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimant's "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of issues of law. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.

1999). The factual findings of the ALJ, however, are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Relevant Findings

ALJ M. Reeves properly conducted the five-step inquiry, the first four steps of which are not disputed.

Analyzing the medical and other evidence, the ALJ found the following severe impairments:

> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine with neuropathy and obesity (20 CFR 404.1520(c) and 416.920(c)).

(R. 18)

The ALJ found that Applicant possessed the following residual functional capacity (RFC):

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she must have a sit/stand option, as she can sit for 15 minutes at one time and stand for five minutes at one time. She can sit for six hours and stand for two hours in an eight-hour day. She can lift two to five pounds and can occasionally handle and finger.

(R. 19)

At step five, the ALJ relied upon the testimony of a vocational expert (VE), Kristina Fredericksen. (R. 56–61) The VE agreed that Applicant would not be able to perform her prior work as a child monitor, corrections officer, or home attendant, all of which were at a medium exertion level, and not sedentary. (R. 56–57)

The ALJ presented the VE with the essentials of the residual functional capacity finding quoted above, and asked whether there were jobs that Applicant could perform. (R. 57–58) The VE replied as follows:

> The only other job that provides a sit/stand option with occasional reaching and — or occasional handling and fingering would be a call-out operator. That is DOT Code 237.367-014. The SVP is 2 which is unskilled and at the sedentary level there are 9,000 jobs in the national economy.

(R. 58) The ALJ then confirmed that such employment would be consistent with certain limitations, such as handing and fingering occasionally, lifting two to three pounds, sitting for 15 minutes at a time and 5 minutes standing at the same work station, a high school education, and some past relevant work experience. (R. 58–59) In the course of cross-examination, the VE confirmed the requirement that such a person would be off-task less than 10% of the time, with one unexcused absence per month. (R. 59–61)

The ALJ's post-hearing written decision made the following relevant findings at step five:

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. . . .
>
> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the impartial vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The impartial vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as the following:
>
> - Call-Out Operator (DOT number 237.367-014, sedentary level of exertion, SVP 2, unskilled, 9,000 jobs in the national economy).

> Pursuant to SSR 00-4p, the undersigned has determined that the impartial vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the impartial vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(R. 26)

### C.  Discussion

Applicant contests the ALJ's step 5 finding that there is a job existing in the national economy in significant numbers that she is capable of performing.

That job, the VE testified and the ALJ found, is the job of call-out operator (DOT number 237.367-014, sedentary level of exertion, SVP 2, unskilled).[2] According to the Dictionary of Occupational Titles (DOT), approximately 9,000 such positions exist in the national economy. According to Applicant, however, 9,000 is not a "significant" number of jobs, and in any event, the job of call-out operator is obsolete. I find that these defects, in combination, justify a remand for further development of the record.

The Social Security Act sets no lower limit for what constitutes a "significant" number of jobs. The case law provides no clear guidance.

The U.S. Court of Appeals for the Third Circuit has noted that the existence of 200 relevant jobs in the *regional* economy is an "indication" that a

---

[2]   TITLE(s): CALL-OUT OPERATOR (business ser.; retail trade)

Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.

GOE: 07.05.03 STRENGTH: S GED: R3 M2 L3 SVP: 2 DLU: 77
ONET CROSSWALK: 53117 Credit Checkers

Entry for DOT code 237.367-014 (https://occupationalinfo.org/23/237367014.html)

7

sufficient number of jobs exist in the *national* economy. *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987). *See also Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) (holding, based on *Craig, supra,* that "the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor [in Pennsylvania] was evidence of other work in significant numbers in the national economy"). There are no regional data in this record, however, and no indication as to how such data would translate to a national figure. The case law is otherwise variable.[3]

In addition, Applicant has raised a significant issue as to whether the job of call-out operator is obsolete. It is, of course, listed in the DOT, and I do not

---

[3] Here I list a sampling of cases, reported and unreported, cited by both parties. *See Sanchez v. Comm'r of Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017) (finding that 18,000 jobs in the national economy was a "significant" number, citing *Johnson v. Chater*, 108 F.3d 178 (8th Cir. 1997) (finding 10,000 jobs "significant")); *Morris v. Comm'r of Soc. Sec.*, No. 1:19-CV-13744-NLH, 2020 WL 2764803, at *8 (D.N.J. May 28, 2020) (upholding findings based on 60,000 to 90,000 jobs as "surveillance monitor," as well as some 50,000 jobs as call-out operator) (citing with approval *Benton v. Comm'r of Soc. Sec.*, No. 1:18-CV-09478-NLH, 2019 WL 2285490, at *8 (D.N.J. May 29, 2019) (finding that 1,940 tree-planter jobs in the national economy constituted a significant number of jobs)); *Hamilton v. Colvin*, 105 F. Supp. 3d 223 (N.D.N.Y. 2015) (finding 5,160 insufficient but stating that "numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held significant"); *Clark v. Comm'r of Soc. Sec.*, No. 217CV501FTM99DNF, 2019 WL 1091244, at *4 (M.D. Fla. Mar. 8, 2019) ("10,000 electrical accessories assembler jobs found by the expert may not amount to a significant number of jobs in the national economy."); *West v. Chater*, No. C-1-95-739, 1997 WL 764507, at *1 (S.D. Ohio Aug. 21, 1997) ("100 jobs locally, 1,200 jobs statewide, and 45,000 jobs nationally did not constitute a "significant" number of jobs under the statute."); *James A. v. Saul*, No. 1:19-CV-180-JVB, 2020 U.S. Dist. LEXIS 121297, at *5, *8 (N.D. Ind. July 10, 2020) ("[t]o the Court's knowledge, 14,500 is far below any national number of jobs that the Seventh Circuit Court of Appeals has determined to be significant," and ruling that this figure, representing "approximately 1 out of every 10,000 jobs, in the national economy is not a significant number of jobs."); *Lemauga v. Berryhill*, 686 F. App'x 420, 422 n.2 (9th Cir. 2017) ("We note that this court has never found [12,600] to be significant,"); *Randazzo v. Berryhill*, 725 F. App'x 446, 448 (9th Cir. 2017) (observing in the course of remanding on other grounds that 10,000 jobs in the national economy not "necessarily" significant); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (2,500 jobs regionally and 25,000 nationally presented a "close call" but was sufficient).

suggest that an ALJ cannot rely on descriptions and figures in the DOT as a general matter. Here, however, Applicant suggests that the particular listing for call-out operator has not been updated since 1977. She points out that the more modern Department of Labor O*NET index "crosswalks" the occupation of call-out operator, merging it into that of "53117 Credit Checkers," an occupation requiring, *inter alia,* computer skills. (Pl. Brf. 22–23 (citing (https://occupationalinfo.org/onet/53117.html).) These circumstances also suggest that the VE should elaborate on the source of the "9,000 jobs" figure and perhaps correlate it to a particular time period.[4]

I do not prejudge the proper resolution of the issue. Nor do I suggest that O*NET has superseded DOT, or that DOT cannot be cited and relied on. *Smith v. Comm'r of Soc. Sec.*, No. 19-20682, 2020 WL 7396355, at *7 (D.N.J. Dec. 17, 2020) (court is not empowered to reform the methodology prescribed by the SSA regulations); *Sanabria v. Comm'r of Soc. Sec.*, No. 2:15-CV- 8963, 2017 WL 436253 (D.N.J. Jan. 31, 2017) ("Although Plaintiff may disagree with the relevance of the [DOT] in the modern-day work force, 'the DOT remains an appropriate source of occupational data."). Under these particular circumstances, and with respect to this particular listing, however, I believe the VE's rather threadbare opinion requires elaboration, or perhaps supplementation with citation of additional jobs that might be suitable for a person with Applicant's limitations.

### III. CONCLUSION

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala,* 55 F.3d 900, 902 (3d Cir. 1995). Here, moreover, the relevant record consists not of matters in Applicant's control, but rather the testimony of a VE called by the ALJ as to an issue regarding which the SSA has

---

[4]   In a 2020 case in this district, a figure of 50,000 jobs was cited for the occupation of call out operator. *See Morris v. Comm'r of Soc. Sec.*, No. 1:19-CV-13744-NLH, 2020 WL 2764803, at *8 (D.N.J. May 28, 2020).

9

the burden of proof. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 (1987).

I will not reverse outright and award benefits, but neither will I affirm based on this skimpy record and inconclusive precedent. I am persuaded that the better course is to simply develop that record. Before this case, this Court cannot recall seeing any ALJ decision that did not name two or three alternative appropriate positions existing in sufficient numbers in the national economy. Here, the VE's input seems to have been rather offhand, and the conclusion that call-out operator is the "only" position compatible with Applicant's limitations is undeveloped and unsupported. I am convinced that a remand will place the Administration's decision, whether it is to grant or deny benefits, on a firm footing.

For the foregoing reasons, the matter is **REMANDED** for further proceedings and development of the record as to step five only. An appropriate order accompanies this Opinion.

Dated: December 8, 2021

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**